Good morning. May it please the Court, my name is Douglas Nelson. On behalf of the petitioner, Mr. Bashar Asmaro. Mr. Asmaro is a native and citizen of Iraq who fled his country on account of persecution related to his impudent political opinion, his Chaldean ethnicity and his Catholic religion. The immigration judge denied all relief because the judge made an unreasonable determination that the respondent was not credible and that the respondent did not provide enough evidence of his identity. First, I'd like to speak about his identity. Since you have a short time, that's what I'd like you to focus on. The credibility we see a lot of. This is a novel issue. And by the way, I will resume in two minutes, Your Honor, if I may. Regarding the heightened standard which the judge applied to identity, that is not a standard which is found in the law. I think it's so ironic that the immigration because the respondent provided those documents to the government when he initially applied for asylum. The government acknowledged that they had received such documents. The judge acknowledged that such documents were frequently lost by the asylum office and not placed into the record of proceedings. Nevertheless, the judge denied him asylum because, in part, he didn't provide sufficient identity documents. However, that's not the standard. The regulations under Section 8 CFR Section 208 specifically state that uncorroborated but credible testimony by the applicant may be sufficient to sustain a burden of proof for asylum. This respondent, as we can later argue, did testify in a credible manner. Let me ask you about that. Do you think the credibility that's referenced there is overall credibility or credibility as to identity issues? I think the judge used both, Your Honor. But what do you think the regulations or the commentary means that if you provide credible testimony, does that mean you have to have your whole asylum application be credible, or does it just mean your testimony about identity needs to be credible in order to establish identity? There are no specific instructions in the regulations of the statute which would give us an answer to that question. It's my personal opinion that it's referring to the overall credibility of the claim. Now, the respondent, though, and it must be remembered, I say the respondent, I mean petitioner, it must be remembered that many of these petitioners' first priority when they leave the country is to flee persecution and not to bring corroborative evidence with them. And so the law allows for them to testify without corroborative evidence, and so long as that testimony is credible, they can be accepted for asylum. This respondent not only testified in an incredible manner, but he did provide additional evidence of his identity. First, there was the evidence that he spoke in the Chaldean language, which is a language specific to the Chaldean ethnicity, which is an entirely Catholic or Christian group. But second, he did provide an identity document which he had a copy of, and it was translated and provided to the court. Now, the only problem with that identity document is the date of birth. The respondent testified that at the border and throughout his proceedings that he was born on July 10, 1978. However, his document records his birth as August 13, 1978. When confronted with this conflict, he plausibly and consistently and credibly explained that he was born in a little village and his father took him out of the village to be registered for his birth and that the Iraqi government registered his date of birth and recorded the date of registry on the same day. It's a simple and plausible explanation. When the judge was critical of the respondent in this regard, the judge was projecting an American or Western view as to how things should be recorded and how things should be treated and viewed in Iraq. He cannot expect, nor is it unreasonable for the judge to expect, that things as they are done in America are done in every country. And that records ---- Kagan, back up for a minute. Is there ñ do you understand the BIA ruling to have made a separate ñ I mean, Judge McEwen has sort of asked this before, but a separate ruling about identity at some sort of heightened standard? Is there a separate identity issue here as to which we're applying a heightened standard of credibility or not? No, Your Honor, I ñ You sort of refer to that possibility. The BIA doesn't seem to. That's correct. I think the BIA dodged that question and they came up with two other reasons why they would find that the respondent is not credible. And neither of those reasons are supported by the record. It's ñ They also don't have to do with identity, right? That's correct. For example, the board says, at his credible fear interview, he failed to mention the death of his cousin. Well, that's not the purpose of a credible fear interview. The purpose of a credible fear interview is merely to establish eligibility for asylum. And I've included in our ñ Well, it's included in the transcript a copy of the credible fear notes and never was he asked, were your relatives or cousins or other persons harmed? So that basis upon which the board relies is completely unsupportable and unreasonable. The board continues that the petitioner escaped on January 20, 2000 before he was jailed while in his hearing testimony, he stated that he was detained for two days. The respondent testified and in his application for asylum, he stated that he was held in a bath party office in a cell. Now, that may or may not be a jail. And so there's a distinction here. They're saying that that is a jail when he's only described it as a bath party office cell and that he was able to leave that bath party cell before they took further action and took him to jail. And so the reasons that the board has provided are also not reasonable under the law. Now, one other big question that I think should be addressed is the respondent's demeanor. The respondent testified in a deliberate manner because the judge had repeatedly told him that these proceedings are important and that if he is found to have a frivolous claim, he's going to be deported for the rest of his life. And the judge told him that he should pause whenever the interpreter interrupted him and that he should wait for all the answers, I'm sorry, for everything to be interpreted before he is to respond. And he followed those instructions. Indeed, in one point in his case or during his testimony, he answered too quickly and the judge instructed him not to do that. And so he slowed his responses. And then it's ironic that the judge would say that the petitioner's answers were not forthcoming when in fact he was just merely being deliberate in his responses. Now, there's no evidence in the record that he was evasive or nonresponsive to the questions. Indeed, he many times offered more information than was required of him. So he was attempting to give the court the full information regarding this claim. I have about two minutes left, and so I will... Can I make an illegal entry into the United States and then come back and present this? No, Your Honor. That's a very key question, and let me address it very quickly. The law says that if a refugee comes to the border and requests asylum, then that person must be taken into custody and given a credible free interview. However, at that time, the government had established an asylum office on the border and instead of taking the persons into custody, was adjudicating claims right there at the border and telling them to wait in Tijuana. That's why there was a group of Chaldeans in Tijuana. The government was inviting people to come to Tijuana in essence... So where did he live? In Tijuana? He was in Tijuana briefly while he applied for asylum and the case was being decided. But before the case was decided, the government realized that they shouldn't be doing this, that the regulations required that these persons be taken into custody. And he went to the government and they accepted him into the United States and eventually paroled him on a bond. At what point did he give them his documents before or after that happened? In his initial application, when he was in Tijuana, on a pro se basis, he filled out an application pro se and surrendered the documents. He was not represented at the time. In Tijuana? In Tijuana. They did it at the consulate office or through the consular or what? Right at the border. Right at the border? Right at the border, there's a special cases office. Just before you get to inspection, you turn to the right and that's where the office is. Thank you. Court, please. Welcome back. Thank you. Before I get to the analysis of the judge's decision, which is all that Petitioner attacked in his brief, I want to turn to two findings by the board which he only attacks for the first time here in oral arguments, which were sufficient by themselves to sustain the negative determination. First of all, does the board, I mean under the new regulations where the board isn't supposed to be making fact findings, does the board get to do that? Well, the board, what the board was saying was we agree with the immigration judge and particularly we point this out. Yes, they can do that. At least I believe they can. It's strangely worded. I mean at some point they say we agree with the immigration judge and then they say we find. We find that he was not credible because at his credible fair interview he failed to mention the death of his cousin and he claimed in his own case he escaped. We find these are significant inconsistencies which are the substance of the claim and are an adequate basis for an adverse credibility finding. So they seem to be saying sort of two things. First we find it for the reason the board, the judge says and second we find it independently for these two reasons. And I guess what I'm asking is is the second one a legitimate, the board or the attorney general has sort of bound the BIA's hands at this point to not be making factual determinations and isn't that one? No, they were making that determination from the record. For example, Well it's not the record but it's not the factual determination. No, they were making the determination from what was in the administrative record. It's the same thing as if this court after listening to all the arguments in a case comes up with a reason as it sometimes does comes up with a reason of its own to either sustain or reverse. Now the two things the first thing that the board found was a credibility determination and what they said was that there was a conflict between what he said in his testimony before the solemn officer and what he said You will find this at page 460 When was the last time you were arrested? January 2000 I escaped before I got to jail. This is nothing about being held in a little office but escape before I got to jail. I had a friend help me flee. He told me they were coming for me. And then further down it says Then I heard I would still be arrested so I fled. In other words whereas he testified at the hearing that he was arrested held for two days at this office in his credible fear hearing he said he got away before they nabbed him. Was there testimony by the officer who heard this? The record is here it's in the administrative record it's the notes. I thought that In fact if you will look at page 59 of the excerpts of record that Petitioner himself has put in you'll find it. I'm sorry I didn't hear that. I said if you will look at page 59 of Petitioner's own excerpts of record which he just finished explaining he put in so that this court would know what took place you will find what I just quoted. Now the second thing that the board found was that even if we accept his credibility all he has shown was that he was held for two days and slapped around he never did answer that in his brief I don't know I lost the page Can I ask a predecessor question just for a moment I gather you're not relying on there being any special Pardon me? I gather that you're not relying on there being any special identity I will get to identity in a minute but I just wanted to point out those two things that basically what he said in his brief was yes in all my life I've suffered all this prejudice etc. etc. he made the blanket statement that he had suffered something horrendous which was worse than Chen but he didn't specifically answer the board saying no you didn't now in terms of identity what's he supposed to say no I already said it no he should at least acknowledge what the board said he didn't even say the board is wrong the board made a finding that what he calls all I suffered was I was slapped around but the point is those are two things which by themselves that and the credibility issue now getting to the identity I will point out that identity is an essential part of credibility because if you are not who you say you are then the story that you tell is certainly open to question well that's true and identity has always been considered part of the credibility overall credibility but the I.J. seemed to suggest and I don't think the government is relying on this that there is some independent requirement in the statute that identity be proven and that it be absolutely proven by some different standard of proof well the I.J. made that he pointed out what was in the new regulation statute yeah or new statute but when he got around to treating he was really treating it as part of credibility and what he said and basically what he said was that the conflict in regard to his birth date and the variation in his signatures raised questions about his identity now I would like to point out that a credibility a negative credibility determination is not a finding that the applicant has not told the truth the applicant has the burden of proof his first burden is proving that what he says happened to him in fact did happen therefore a negative credibility determination is simply a finding that he didn't carry that burden of proof in other words if it's an equipoise maybe it did happen maybe it didn't happen maybe he is who he says he is maybe he isn't who he says he is he's not carried his burden of proof and I would suggest that things like this variation in the birth dates and the signature variations are sufficient now more to the point the major part of the judge's determination was a demeanor evidence now this before you get to that I'm still puzzling over the identity issue because if I look at the statute having to do with relation to identity it talks really about the attorney general doing things like the attorney general can ask you for fingerprints and you can ask for a photograph and it says you can't get asylum until identity has been checked against appropriate records none of that language suggests anything in that regard on the part of the applicant well the judge pointed out this regulation but I am suggesting that when he actually got around to dealing with identity he dealt with it the same as the rest of the credibility that you're essentially saying we don't need to worry about the statute having any special effect well the judge might have said something wrong but that doesn't mean the statute is irrelevant I would say yes let's put it this way I am not I'm sorry I didn't understand I didn't understand your question so if the statute is irrelevant then is your position that identity that he bears the burden on identity under the normal burden of a petitioner yes precisely okay now I would still have some time left yeah 15 seconds wow this court has been very clear that and I cited all the cases in our brief that the appellate court the court itself dealing with a cold record cannot make the demeanor determinations that it credits the determination providing that the judge explains the reasons for it and of course the judge did here and that these reasons are not obviously wrong I might I'll give you one if I can one quick little thing thank you I appreciate that very much I was illustrated this way if I were to answer your question like this or if I were to answer it like this it would appear the same way in the transcript in other words the way a question is answered is something only the judge is able to tell the record does not the way it comes out in the record does not allow you to make a determination there does not give you the basis to make a determination there thank you you have two minutes of rebuttal can you tell me why assuming credibility there was sufficient evidence of past persecution well it wasn't merely just two days of detention and beating rather he has been harassed his entire lifetime because of his chaldean ethnicity and his catholic religion but none of that would amount to persecution under the statute right well no under mashiri m-a-s-h-i-r-i threats of persecution which are backed up by other events are sufficient to establish past persecution what were the threats of persecution i thought there were threats of things like your life's going to be wasted or something like that no he said and testified to and wrote in his declaration that they threatened to kill him if he didn't obey their orders join the bath party and when he left their office when he left that bath party cell he was under the understanding that if he were caught again and he were not a member of the bath party that he would be killed disappeared or jailed now government council brought up the point basically your past persecution is the detention how he was treated in detention and the threats that were made at the end of detention combined with the history of being threatened and the fact that you didn't give me any examples of the history of being threatened when he was a student throughout his adolescent years  he said when was the last time you were arrested he answered it he said it was January 2000 so there was an arrest and he testified that he was taken to a bath party office and held in a cell but he continued I escaped before I got to the prison and he said  was taken      cell but he continued I escaped before I got to the prison and he said I escaped before I got to the prison            when was the last time you were not arrested he said it was January 2000 so there was an arrest and he continued
judges: McKeown, Berzon, King